IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DEJON RAMON WALDRON,<br><br>                             Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                             Respondent. | **MEMORANDUM DECISION AND ORDER**<br><br>1:19-cv-82-DB<br>1:15-cr-41-DB<br><br>District Judge Dee Benson |

Before the Court is Petitioner Dejon Ramon Waldron's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Having considered the motion and pleadings, having reviewed the file, and being otherwise fully informed, the court enters the following Memorandum Decision and Order.

## **BACKGROUND**

In early 2015, Utah Adult Probation and Parole received information from an anonymous source that Mr. Waldron, a parolee at the time, was illegally in possession of drugs and weapons. On February 12, 2015, a search of the residence of Mr. Waldron and Kyrinda Moore ("Codefendant") was executed pursuant to the search conditions of Mr. Waldron's parole. This search resulted in the discovery of marijuana, methamphetamine, and heroin at the residence. In addition, Mr. Waldron's wallet chain had a key to a patio closet in the residence, which contained body armor and guns.

On June 17, 2015, a federal grand jury returned an indictment against Mr. Waldron for possession of methamphetamine, heroin, and marijuana with intent to distribute, possession by felon of firearms and ammunition, possession of a firearm in furtherance of a drug trafficking

crime, possession of a firearm with an obliterated serial number, and possession of body armor by felon. (Case No. 1:15-cr-41, Dkt. No. 1.)[1]

Mr. Waldron was arrested and made his initial appearance on July 22, 2015 before a magistrate judge. (1:15-cr-41, Dkt. No. 11.) The court appointed Robert Hunt from the Utah Federal Defender's Office to represent Mr. Waldron. (*Id.*) Jamie Zenger from the Utah Federal Defender's Office joined as co-counsel for Mr. Waldron. (1:15-cr-41, Dkt. No. 39.) On January 21, 2016, Mr. Hunt and Ms. Zenger filed a motion to withdraw from representing Mr. Waldron, due to a conflict of interest within the Utah Federal Defender's Office. (1:15-cr-41, Dkt. No. 45.) The motion was granted and Michael J. Langford was appointed to represent Mr. Waldron. (1:15-cr-41, Dkt. Nos. 49, 50.)

Mr. Waldron's case was presented in a jury trial on May 2, 2016 through May 3, 2016. (1:15-cr-41, Dkt. No. 108.) On May 3, 2016, the jury returned a verdict, finding Mr. Waldron guilty on all but one count. (1:15-cr-41, Dkt. No. 113.)[2] Following this verdict, Mr. Waldron timely filed a motion for a new trial on June 15, 2016, alleging that the prosecution had suppressed impeachment evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). (1:15-cr-41, Dkt. No. 118.) The court denied the motion, finding Mr. Waldron failed to show the evidence at issue was material. (1:15-cr-41, Dkt. No. 138.)

---

[1] Mr. Waldron was charged with these same seven counts in a superseding indictment returned on April 6, 2016. (1:15-cr-41, Dkt. No. 58.)
[2] The jury found Mr. Waldron "guilty" of Count I, Possession of Methamphetamine with Intent to Distribute; Count III, Possession of Marijuana with Intent to Distribute; Count IV, Felon in Possession of Firearms and Ammunition; Count V, Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and Count VII, Felon in Possession of Body Armor. The jury found Mr. Waldron "not guilty" of Count II, Possession of Heroin with Intent to Distribute.

Mr. Waldron was sentenced to a total of 204 months imprisonment. (1:15-cr-41, Dkt. No. 172.) Mr. Waldron appealed, and the Tenth Circuit Court of Appeals affirmed. *See United States v. Waldron*, 756 F. App'x 789, 802 (10th Cir. 2018).

On July 31, 2019, Mr. Waldron filed this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence. (1:19-cv-82, Dkt. No 1.)

## **DISCUSSION**

Section 2255 allows prisoners in federal custody to move for their sentences to be vacated, set aside, or corrected if their "sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In his petition, Mr. Waldron challenges his sentence on three separate grounds: (1) ineffective assistance of counsel; (2) actual innocence; and (3) inconsistent verdict.

### **1. Ineffective Assistance of Counsel**

Mr. Waldron claims his counsel was ineffective for failing to: (1) investigate certain fingerprint and DNA evidence in order to show that Mr. Waldron's DNA was not located on the contraband; (2) investigate the service records of the recording device used by police to interview Codefendant; (3) investigate the alleged anonymous tip received by Adult Probation & Parole; (4) investigate Codefendant's interview with police for coerced false statements; (5) interview and introduce certain witnesses that Mr. Waldron wished to call; (6) protect Mr. Waldron's right to a speedy and public trial; (7) investigate a hair follicle drug test showing that drugs were present in the residence prior to Mr. Waldron moving in; (8) investigate Mr. Waldron's bank records showing no suspicious activity; (9) research and raise objection to the

application of 21 U.S.C. § 841(a); (10) research and raise objection to the application of 18 U.S.C. § 922; and (11) pursue a motion to suppress.

To make out a claim for ineffective assistance of counsel, a petitioner must satisfy two prongs: (1) petitioner "must show that counsel's representation fell below an objective standard of reasonableness;" and (2) petitioner must demonstrate that "any deficiencies in counsel's performance [were] prejudicial to [petitioner's] defense." *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). A court assessing an ineffective assistance of counsel claim "must be highly deferential" to counsel and make "every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Against this standard, Mr. Waldron's motion fails.

### a. Failure to Investigate

Mr. Waldron claims that his counsel was ineffective for failing to investigate certain evidence, including fingerprint and DNA evidence, the recorded interview of Codefendant, the anonymous tip, a hair follicle drug test, and Mr. Waldron's bank records. Mr. Waldron also complains that his counsel failed to interview and introduce certain witnesses at trial. The court does not find that any of these alleged failures by counsel amount to ineffective assistance.

In this case, Mr. Waldron must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. State of La.,* 350 U.S. 91, 101 (1955)). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. Notably, "an attorney is not

required to investigate all leads as long as the decision not to pursue a particular lead, or to pursue a particular lead only so far, is reasonable under the circumstances." *Brecheen v. Reynolds,* 41 F.3d 1343, 1366 (10th Cir. 1994) (internal citations omitted). While counsel could certainly have "done more" for Mr. Waldren, the court finds—applying a heavy measure of deference to counsel's judgments—that counsel made reasonable decisions to focus their time and efforts on pursuing certain defense strategies for the upcoming trial and not others. *Smith v. Workman*, 550 F.3d 1258, 1271 (10th Cir. 2008) ("In this case, as in almost every case, trial counsel could have done more. However, the question is not whether he could have done more, but rather whether his decision not to do more was objectively reasonable, applying heavy deference to the counsel's judgments.") (citations and internal quotations omitted). The court considers the decision not to investigate the evidence at issue to be sound trial strategy under these particular circumstances, especially considering the fact that Mr. Waldron has not demonstrated that investigating the evidence described in the petition would have changed the outcome of the trial.

Indeed, the court finds that even if Mr. Waldron's counsel made a "professionally unreasonable" error in defending Mr. Waldron, this "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691. Mr. Waldron must show "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. For instance, the jury convicted Mr. Waldron without DNA or fingerprint evidence linking Mr. Waldron to the crime. Thus, even if additional testing had returned negative for Mr. Waldron's fingerprints and DNA, the evidence against Mr. Waldron at trial would not change and would still have sufficiently established Mr. Waldron's possession of the contraband for purposes of the jury's verdict. As for

investigating the anonymous tip, even if counsel were to investigate the tip and find that it was fabricated—as Mr. Waldron would have us believe—this ultimately would not have changed the fact that, under the terms of Mr. Waldron's parole agreement, his residence was subject to wholly suspicionless searches. Thus, Mr. Waldron has not shown that investigating the anonymous tip would have actually changed the outcome of his trial. Similarly, Mr. Waldron has not shown that failing to investigate and introduce the hair follicle drug test at trial was a prejudicial error because, even if such a test demonstrated that drugs existed in the apartment prior to Mr. Waldron's release from jail, this does not alter the fact that the weight of the trial evidence showed that the particular drugs seized the day of the search were possessed by Mr. Waldron with intent to distribute. Concerning the investigation of Mr. Waldron's bank records, a jury's consideration of Mr. Waldron's bank account would not change the fact that a significant amount of drugs were found in Mr. Waldron's apartment. Mr. Waldron has failed to show that a lack of suspicious deposits or withdrawals would have changed the jury's verdict. Finally, Mr. Waldron has not demonstrated that the additional witnesses he wished to introduce at trial—Codefendant, Codefendant's children, Mr. Waldron's neighbors, and a car salesman—could have or would have rebutted the evidence showing possession of the contraband found in the residence. Thus, Mr. Waldron fails to show that he suffered any prejudice from the alleged error of failing to interview and introduce these witnesses.

In addition, to the extent that Mr. Waldron alleges that the police framed Mr. Waldron or threatened Codefendant into making false statements, Mr. Waldron has not demonstrated ineffectiveness of counsel because he has not provided any evidence supporting these conclusory accusations. *United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting Defendant's ineffective assistance of counsel claims because, "[a]lthough [courts] must liberally construe

Defendant's pro se petition, … we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments"). Furthermore, Codefendant's allegedly false interview was not introduced as evidence at trial, and therefore was not prejudicial to the outcome of Mr. Waldron's case.

For these reasons, the court finds that counsel's failure to investigate any of the evidentiary matters outlined in Mr. Waldron's petition does not qualify as unreasonable or prejudicial under the *Strickland* test for ineffective assistance of counsel.

    b. Failure to Protect Speedy Trial Rights

Mr. Waldron also claims that his counsel failed to protect his right to a speedy trial. The court rejects this argument as well.

Under the Speedy Trial Act, a defendant's trial must commence within seventy days from either the filing of the indictment or the defendant's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). Certain periods of delay are excluded from this time calculation. *See* 18 U.S.C. § 3161(h). Delays resulting from a pretrial motion are excluded from the date of the filing of the motion through the conclusion of the hearing on or other disposition of the motion. 18 U.S.C. § 3161(h)(1)(D). Periods of delay may also be excluded from the speedy trial calculation if they result from a continuance granted by a judge who has found that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7).

When examining these periods of delay for constitutionality, courts look to whether such delay "was long enough to create presumption of prejudice." *United States v. Nixon*, 919 F.3d 1265, 1269 (10th Cir. 2019). The delay period begins with the indictment or the arrest, whichever date comes first, and ends with the trial. *Id.* The "bare minimum" for a delay period to

create a presumption of prejudice and warrant further judicial examination "consist[s] of the period of roughly twelve months." *Id.* at 1270. Once a presumption of prejudice exists, the court engages in further scrutiny by examining the following factors: (1) the length of the delay; (2) the reason that the government gave for the delay; (3) the defendant's assertion of a speedy-trial right; and (4) the prejudice to the defendant. *Id.* at 1269–70.

In this case, Mr. Waldron's trial commenced within seventy days in accordance with the Speedy Trial Act. Accounting for the exclusions from the speedy trial clock due to Mr. Waldron's Motion to Suppress and the multiple ends of justice continuances granted prior to the trial,[3] only 45 days passed from Mr. Waldron's initial appearance on July 22, 2015. Because three ends of justice continuances were granted in this case, the court also examines the delay period for prejudice. Between Mr. Waldron's indictment and the trial, Mr. Waldron's delay period amounts to approximately ten months and two weeks.[4] Because this period of delay is less than the "bare minimum for judicial examination" of twelve months, no further scrutiny is warranted. Mr. Waldron's right to a speedy trial was not violated.

Moreover, Mr. Waldron's counsel was not ineffective by seeking the March 1, 2016 continuance. Although Mr. Waldron objected to the continuance on the record, the court found that a "failure to continue trial would be more prejudicial to Petitioner than a delay of slightly

---

[3] Mr. Waldron was indicted on June 17, 2015, and his initial appearance was on July 22, 2015. The speedy trial clock thus began on July 22, 2015. Mr. Waldron filed a Motion to Suppress on August 12, 2015, which tolled the speedy trial clock until October 2, 2015, when Mr. Waldron withdrew his Motion to Suppress. Mr. Waldron's original trial date was set for October 26, 2015. However, at Mr. Waldron's request, the court ordered an ends of justice continuance, moving the trial date to January 25, 2016. Mr. Waldron's Codefendant later moved for a continuance, and the court ordered another ends of justice continuance, excluding the time from January 25, 2016 until the new trial date of March 28, 2016. Mr. Waldron's counsel then filed for a stipulated continuance on March 1, 2016, and the court ordered a final ends of justice continuance on March 30, 2016, which excluded the time from March 28, 2016 until the new trial date of May 2, 2016.
[4] Mr. Waldron's indictment was on June 17, 2015, and his trial occurred on May 2, 2016.

over one month." (1:15-cr-41, Dkt. No. 56.) The court's decision was justified by the short time that counsel had been handling the case after Mr. Waldron's prior counsel withdrew from the case, other trials and oral arguments that counsel had been occupied with during the relevant time period, and the seriousness of Mr. Waldron's case. (*Id.*) Mr. Waldron's counsel asked for additional time "to review the discovery, evidence and facts in the case, and to prepare for trial." (*Id.*) Thus, a continuance was deemed necessary. This does not amount to ineffectiveness of counsel.

        c.   *Failure to Research and Object to the Application of 21 U.S.C. § 841(a) and 18 U.S.C. § 922(g)*

Mr. Waldron also contends that his counsel was ineffective for failing to fully understand and raise objections to the application of either 21 U.S.C. § 841(a)[5] or 18 U.S.C. § 922(g)[6] in his trial. After reviewing Mr. Waldron's arguments, the court finds that Mr. Waldron's alleged conduct clearly falls within the text and meaning of both criminal statutes, and Mr. Waldron's counsel was not ineffective for failing to object to the application of the statutes.

First, Mr. Waldron argues that 21 U.S.C. § 841(a) should not have applied to him because § 841(a) does not prohibit possession of controlled substances "with intent to sell." (1:19-cv-82, Dkt. No. 1 at 31.) However, § 841(a) certainly prohibits possession "with intent to … distribute." 21 U.S.C. § 841(a)(1). The court did not "rewrite" this statute as Mr. Waldron claims in his petition. (1:19-cv-82, Dkt. No. 1 at 31.) "Distribute" has long been interpreted to include sales. *See, e.g., United States v. Gay,* 774 F.2d 368, 372 (10th Cir. 1985) (equating the "intent to

---

[5] Mr. Waldron faced three charges (Counts I–III) under 21 U.S.C. § 841(a)(1) for "possession with intent to distribute" controlled substances. (1:15-cr-41, Dkt. No. 1.)
[6] Mr. Waldron faced one charge (Count IV) under 18 U.S.C. § 922(g)(1) for "felon in possession of firearms and ammunition." (1:16-cr-41, Dkt. No. 1.)

distribute" element with the intent "to sell, deliver, or otherwise distribute"). Mr. Waldron's counsel was not ineffective for failing to object to the application of § 841(a).

Mr. Waldron next argues that applying 18 U.S.C. § 922(g) violated the Constitution's Commerce Clause. This is also without merit. The Tenth Circuit has clearly held that "if a firearm has traveled across state lines, the minimal nexus with interstate commerce is met and [§ 922(g)] can be constitutionally applied." *United States v. Urbano*, 563 F.3d 1150, 1154 (10th Cir. 2009); *see also United States v. Bolton,* 68 F.3d 396, 400 (10th Cir. 1995) (finding that "[§] 922(g)'s requirement that the firearm have been, *at some time,* in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause") (emphasis added). As a felon allegedly in possession of a firearm that crossed state lines at some point, Mr. Waldron clearly falls within the purview of § 922(g).

### d. Failure to File a Motion to Suppress Evidence

In his petition, Mr. Waldron also argues that his counsel was ineffective for failing to move to suppress the evidence against him, arguing that it was obtained in violation of his Fourth Amendment rights. The court finds that Mr. Waldron's counsel's failure to file a motion to suppress evidence did not fall below an objective standard of reasonableness and was not prejudicial to Mr. Waldron's defense because there is no showing that a motion to suppress evidence would have been successful.

Mr. Waldron signed an agreement in connection with his parole in which he expressly consented to searches by parole officers of his person, property, residence, or personal effects with or without cause. (1:19-cv-82, Dkt. No. 5, Ex. A.) The evidence which Mr. Waldron would seek to suppress was all discovered in the course of a lawful search, consistent with that agreement. Pursuant to the totality of the circumstances under the circumstances of the search

here, Mr. Waldron "did not have an expectation of privacy that society would recognize as legitimate." *Samson v. California*, 547 U.S. 843, 852 (2006).

Mr. Waldron further argues that the scope of the search was unreasonable because Codefendant's property and personal possessions were also searched. However, the court finds that Mr. Waldron lacks standing to challenge any alleged violation of Codefendant's Fourth Amendment rights. *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978).

### 2. **Actual Innocence**

Mr. Waldron next asserts actual innocence as a basis to grant his motion. The court finds no merit to this claim.

"To establish actual innocence, petitioner must demonstrate that 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 328–29 (1995)). "[A]ctual innocence is not an easy showing to make" because "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *United States v. Cervini*, 379 F.3d 987, 991 (10th Cir. 2004).

In his petition, Mr. Waldron argues that no substantial or physical evidence was presented against him in trial. He also asserts that each of the statutes he was charged with violating either do not apply to him or are unconstitutionally vague. However, Mr. Waldron fails to clear the steep hurdle to show actual innocence because, beyond these broad and conclusory arguments, he has not provided the court with any new evidence that was not presented at trial, as required by *Cervini*. Although Mr. Waldron takes issue with the amount of evidence raised

against him at trial and the alleged vagueness or inapplicability of the statutes he was convicted under, these concerns do not serve as any new reliable evidence or law for this court to consider concerning Mr. Waldron's guilt.

### 3. Inconsistent Verdict

Mr. Waldron also challenges the verdict returned by the jury on May 3, 2016 as inconsistent. He contends that no reasonable jury could have found him guilty of the possession of methamphetamine but simultaneously not guilty of the possession of heroin, where both drugs were discovered together in the patio closet of Mr. Waldron's residence. The court finds this claim to be procedurally barred.

"[T]o conserve judicial resources and to respect the law's important interest in the finality of judgments," courts adhere to the "general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Cause can be established by a petitioner showing some external impediment prevented timely raising of the claim, such as ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488–92 (1986). Prejudice is established if the alleged errors are shown to have caused "*actual* and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions." *United States v. Bailey*, 286 F.3d 1219, 1223 (10th Cir. 2002) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). A petitioner who is unable to show cause and prejudice may still overcome procedural default if the petitioner can demonstrate that denial of relief would be a miscarriage of justice because the petitioner is actually innocent of the crime of which he has been convicted. *Cervini*, 379 F.3d at 991–92.

Mr. Waldron did not raise his claim of inconsistent verdict on direct appeal. Thus, Mr. Waldron's inconsistent verdict is barred unless he can demonstrate either (a) cause and prejudice,

or (b) actual innocence. Mr. Waldron attempts to establish cause by asserting that he failed to raise this claim on appeal due to ineffective appellate counsel. (1:19-cv-82, Dkt. No. 1.) However, apart from the general allegation of ineffectiveness itself, Mr. Waldron provides no support in his briefing for this claim. Furthermore, Mr. Waldron has not demonstrated prejudice. At best, Mr. Waldron's claim has shown that the alleged errors at trial "created a *possibility* of prejudice," which is simply not enough to withstand dismissal. *See Bailey*, 286 F.3d at 1223. Moreover, no exception to the procedural-default rule applies because, as previously discussed, Mr. Waldron has failed to demonstrate actual innocence.

The court thus finds that Mr. Waldron's claim for inconsistent verdict is procedurally barred under the procedural-default rule.

## **CONCLUSION**

For the reasons set forth herein, Mr. Waldron's Motion to Vacate, Set Aside, or Correct Sentence is DENIED. The court also hereby DENIES a certificate of appealability in this case, pursuant to Rule 11 of the Rules Governing Section 2255 cases.

DATED this 27th day of November, 2019.

BY THE COURT:

_____
Dee Benson
United States District Judge